11
DON J. POOL 166468
THE LAW FIRM OF POWELL & POOL
7522 N. Colonial Avenue, Suite 100
Fresno, California 93711
Telephone: (559) 228-8034
Facsimile: (559) 228-6818
DonP@PowellandPool.com

Attorneys for EDUCATIONAL EMPLOYEES CREDIT UNION

FILED
May 26, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002661379

# UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

* * * *

| | |
|---|---|
| In re<br><br>BROOK ARIAS and DAVID ARIAS,<br><br>Debtors. | Case No. 10-14524-A-7<br><br>Chapter 7<br><br><br>DC No. DJP-1 |
| EDUCATIONAL EMPLOYEES<br>CREDIT UNION,<br><br>Movant,<br><br>vs.<br><br>BROOK ARIAS, Debtor; DAVID ARIAS, Debtor; BETH MAXWELL STRATTON, Chapter 7 Trustee,<br><br>Respondents. | Date: June 22, 2010<br>Time: 1:30 P.M.<br>Dept: A<br>CtRm: 11<br>      U.S. Courthouse<br>      2500 Tulare Street, 5th Floor<br>      Fresno, California |

<u>DECLARATION OF JOHN AKINS IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR WAIVER OF FRBP 4001(a)(3)</u>

////

-1-

Declaration of John Akins in Support of
Motion for Relief from the Automatic Stay, etc.

THE LAW FIRM OF POWELL & POOL
7522 N. Colonial Avenue, Suite 100
Fresno, California 93711

I, JOHN AKINS, declare as follows:

1. I am a Delinquency Services Assistant with EDUCATIONAL EMPLOYEES CREDIT UNION ("Movant"). As part of my duties, I have personally reviewed Movant's accounts and loans with BROOK and DAVID ARIAS ("Debtors"). I make this declaration in support of Movant's Motion for Relief from the Automatic Stay and for Waiver of FRBP 4001(a)(3).

2. I am one of the persons with custody and control of the business records of Movant as they relate to this action, and I am very familiar with the manner in which those records are compiled.

3. The records of Movant are made in the ordinary course of business by persons who have a business duty to make such records. The records are made at or near the occurrence of the event of which they record.

4. I have personally reviewed Movant's records as they relate to the Debtors and the matters to which they relate. I make this declaration upon that personal review and upon my own personal knowledge of the facts stated herein.

5. The personal property at issue is a 2001 Ford Truck F250 Super Duty Crew Cab Short Bed, bearing the vehicle identification number 1FTNX21S41EA06630 ("the Property").

6. The Debtors are the owners of the Property.

7. Movant has a perfected security interest in the Property. The Property is a motor vehicle for which a certificate of title is provided for by state law. A true and correct copy of the online Paper Title for the Property is attached hereto as exhibit A and is incorporated herein by this reference.

/////
/////
/////
/////
/////

Declaration of John Akins in Support of
Motion for Relief from the Automatic Stay, etc.

8.      On or about October 5, 2005, Movant made a loan to the Debtors in the approximate amount of $7,400.00 for the purchase of the Property ("Loan Advance Voucher"). A true and correct copy of the Loan Advance Voucher, along with the Master Loan Disclosure Truth In Lending Disclosure and Open-End Loan Agreement, which evidences the agreed terms of use of the Loan Advance Voucher ("Lending Disclosure"), are attached hereto collectively as exhibit B and incorporated herein by this reference.

9.      Pursuant to the Loan Advance Voucher, the Debtors agreed to make minimum monthly payments of $550.00. The interest rate was 8.00%.

10.     The Debtors filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Code with this Court on April 27, 2010 ("Petition").

11.     The Debtors valued the Property on Schedule D of their Petition at $4,950.00. The Debtors scheduled Movant's secured claim as $16,846.00.

12.     Another payment of $338.00 will come due on May 25, 2010, and on the 25th day of each month thereafter.

13.     Movant's total claim with respect to Property, not including attorney's fees and costs, as of May 25, 2010, is calculated as follows:

| | |
|---|---|
| Principal | $16,959.28 |
| Accrued Interest | 305.45 |
| Late Charges | 30.42 |
| **Total Outstanding Balance** | **$17,295.15** |

Interest continues to accrue at the rate of 8.50% per annum, or a daily rate of $3.95.

14.     Debtors have failed to surrender the Property as stated in their Statement of Intentions.

15.     On May 10, 2010, an online verification of the Kelly Blue Book resource website, valued the Property at approximately $6,325.00. This is the value indicated for collateral of this year, make, model and general features in the reference guide most commonly used source for valuation data used by Movant in the ordinary course of its business for determining the value of this type of collateral. A true and correct copy of the online resource

-3-

Declaration of John Akins in Support of
Motion for Relief from the Automatic Stay, etc.

page from the Kelly Blue Book website, referencing the value of the Property at approximately $6,325.00 is attached hereto as exhibit C and incorporated herein by this reference.

16. After subtracting the total amount of all liens from the value of the Property as set forth in Paragraph 11 above, there is no equity in the Property for the Debtors or the Estate.

17. Movant requests that the Court grant Movant's Motion for Relief from Stay so that Movant may pursue and exercise its rights to the Property under state law. Movant also requests that the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this ____ day of May 2010, at Fresno, California.

           / S /   John Akins
           JOHN AKINS

THE LAW FIRM OF POWELL & POOL
7522 N. Colonial Avenue, Suite 100
Fresno, California 93711

EXHIBIT A

Account View

### Release

### Duplicate Title

Request Date:     Action Date:
Status:           Last Worked By:
State:            Required State Forms:
Reason            Requesting Dept:
Billable: ☐

### Follow Up
Client Activities

### Direct Lending Services

## Title

Actions

**Title-Electronic**
**Perfecting**

VIN/HIN: **1FTNX21S41EA06630**   State: **CA**   Title Number:
Year: **2001**   Make/Builder: **FORD**   Model:   License Plate: **LTBLUTK**

### Overview

Owner(s): **ARIAS DAVID**           Closed Date:
Lienholder: **EECU**                Closed Reason:
Match Type: **AUTOMATIC**           Document Location:
Match Date: **3/19/2004**
Issuance Date: **3/18/2004**
Imported Date: **3/19/2004**

### Owners

| Type    | Name        | Address   | City      | State/Province | Postal Code |
|---------|-------------|-----------|-----------|----------------|-------------|
| Unknown | ARIAS DAVID | PO BX 714 | RIVERDALE | CA             | 93656       |

### Property

Odometer Reading: **000007713**         Net/Unladen Weight: **05654**
Odometer Accuracy: **Actual Mileage**   Branding:
Prior Odometer Reading Date: **05/26/2001**   Fuel Type: **Gasoline**
Current Odometer Reading Date: **00/00/0000**   Engine #:
Miles/Kilometers: **Miles**             Equipment #:
# Of Axles: **2**                        Year 1st Sold: **00**
Body: **4C**                             Asterisk Year: **01**
Registration Exp. Date: **10/31/04**    VLF Class: **HZ**

### Liens

| Name | Address | Lienholder ID | Lien Date |
|------|---------|---------------|-----------|
|      |         |               |           |

EXHIBIT B



**Educational Employees CREDIT UNION**
P.O. Box 5242
Fresno CA  93755-5242
(559) 437-7700
www.eecufresno.org

# LOAN ADVANCE VOUCHER

Date  10/05/2005

| Payor | Processed by: | | Branch |
|---|---|---|---|
| Educational Employees Credit Union<br>P.O. Box 5242<br>Fresno CA  93755-5242 | DIANNE MITCHELL | | Hanford Branch |
| | Account No. | Loan Suffix | Loan Type |
| | 11388125 | 1 | Used Auto |

| Payee/Dealer | Authorized by: | DL# |
|---|---|---|
| DAVID ARIAS | DAVID A ARIAS | B6096311 |

| Year/Make/Model | Vehicle I.D. Number | License |
|---|---|---|
| 2001 Ford Truck F250 Super Duty Crew Cab Short Bed | 1FTNX21S41EA06630 | LTBLUTK |
| Year/Make/Model | Vehicle I.D. Number | License |

**Loan Amount  $ 7,400.00**

By signing below, I request and accept from EECU a loan advance in the amount shown above. The advance is made under my EECU Master Loan Disclosure and Open-end Security Agreement ("Master Agreement"). I promise to repay the loan advance per the Master Agreement's terms and the terms shown below.

**Security Agreement**
I give EECU immediate security interest in the vehicle described above, subject to the Master Agreement's terms. EECU can offset any loan payment delinquency by me with funds in any EECU account in which I have an ownership interest. Exercise of this offset by EECU will not waive any other rights EECU has against me.

**Authorization to Pay**
I direct Educational Employees Credit Union (EECU) to pay the above named payee the amount of $ 7,400.00 for the purchase of the above described vehicle or as payoff in full of my loan. I also direct the payee to surrender to EECU a properly endorsed certificate of ownership from the California Department of Motor Vehicles (DMV) to the vehicle described above.

| $ 550.00 | 0.021918 % |
|---|---|
| 10/05/2005 | 8.00 % |

I acknowledge receipt of a copy of this document

*[signature]*                    10/05/2005
DAVID A ARIAS                    Date

---

I acknowledge that I was given an opportunity to apply for and **I do not wish to purchase** the following payment or loan protections:

☐ *Credit Life Insurance* — which would pay off or reduce the balance of my EECU loan in the event of an insured borrower's death. I may choose to add this coverage within 30 days of loan funding.

☐ *Credit Disability Insurance* — which would make the periodic loan payments on my EECU loan in the event of an insured borrower's qualifying disability. I may choose to add this coverage within 30 days of loan funding.

☒ *Mechanical Breakdown Insurance* — which would pay for certain mechanical repairs as specified in the policy. I may choose to add this coverage later.

☐ *GAP Waiver* — which would pay the remaining balance (within the limits of the GAP waiver) in the event my vehicle is stolen or a total loss and my insurance company pays less than the balance of my loan. I understand that I will be fully responsible for any deficiency balance. I may choose to add this coverage within 36 months of loan funding.

If I choose not to increase my payment when adding credit life insurance, credit disability insurance, MBI or GAP Waiver premiums to my loan, it could increase the number of payments required and may increase the amount of interest paid.
Any application for loan or payment protection submitted after loan funding is subject to approval.

*[signature]*                    10/05/2005
DAVID A ARIAS                    Date

OLF-IS_258.3



**Educational Employees CREDIT UNION**

P.O. Box 5242
Fresno, CA 93755-5242
(559) 437-7700
www.eecufresno.org

**Master Loan Disclosure**

Account# 11388125     Date 03/05/2004

**IN LENDING DISCLOSURE AND OPEN-END LOAN AGREEMENT**
In bold face are truth in lending disclosures. Please read the entire agreement.

I applied for an open-end loan account with Educational Employees Credit Union. I agree that the extension of a revolving account to me under this agreement will be subject to the following terms. If I have applied for a VISA card, that account will be subject to a separate disclosure and agreement that I will receive with my cards.

**A. ACCOUNT**
1. If my application is approved the Credit Union will establish a credit limit for me. The amount will be based upon many factors including the value of any security, my ability to pay and my creditworthiness.
2. My account will be an open-end or revolving loan. This means that I can borrow the full amount of the credit limit, repay the principal in full or part and borrow again up to my maximum as long as I continue to be creditworthy.
3. Each joint borrower may use any open-end credit to the extent of the credit limit and will be liable with any other joint borrower for the loan including subsequent increases in the credit limit.
4. As a joint borrower, I remain liable to repay the account, even if another person has been directed to pay the account by court order such as a divorce decree.

**B. LOAN ADVANCES**
1. I can request loan advances in person, by telephone, by mail, by special loan check, by using Online Access PC banking service, using Personal Telephone Access (PTA), Online Loan, or at ATMs owned by the Credit Union.
2. If my request is by check, my negotiation of the check will be my acceptance of the loan advance if honored by the Credit Union.
3. Loan advances requested by Online Access, PTA or ATMs owned by the Credit Union use a unique Personal Identification Number issued by the Credit Union at my request. Telephone, Online Access, or PTA actuated loan requests can only result in transfers of funds to my account or the issuance of a Credit Union check payable to me and mailed to the address on file.
4. Deposit of the funds into my account, whether internal or by direct wire transfer, or on my written authorization your sending the check to someone else as requested by me, will complete the loan advance. I will be obligated to repay such advances to you under the terms of this agreement as if I had personally endorsed the loan advance check.
5. If I have an active ATM Card or Visa Check Card issued by you, I can use it in OptionTeller ATMs or network ATMs to borrow up to the daily cash limit permitted under my separate ATM or EFT Services Agreement. My use of the card and PIN will constitute my loan advance acceptance.
6. Overdraft Protection Advances. I may request an advance by transmitting to the Credit Union a completed check, or making an ATM cash withdrawal or Check Card purchase, at any time that there are insufficient funds in my checking account or regular share account, or by completing any other transaction that would result in a negative balance in any of my accounts. Any resulting overdraft, up to the unused unsecured limit of credit approved by the Credit Union, will be added to my loan balance under this agreement if and when the Credit Union pays the check. Overdraft protection advances will be made in $100 increments, unless my overdraft protection loan source does not have sufficient available credit. If my available credit is less than $100 but enough to cover my overdraft, an advance of the remaining available credit will be transferred to my checking account. Any check presented for payment, which creates an overdraft to my account, will be returned as non-sufficient funds unless Overdraft Protection has been approved and I have signed a separate check overdraft authorization agreement.
7. My loan account may be accessed by me at any time up to the credit limit for the applicable sub-account so long as my creditworthiness and ability to repay the loan have not diminished.
8. The Credit Union has the right to refuse to give me a loan advance. You will notify me in writing, at my address as shown on your records, of the reason for any such denial of credit. Among the reasons for refusing to advance me credit are my having already borrowed up to the credit limit for the applicable sub-account, an adverse change in my credit standing, or my no longer being a member in good standing with the Credit Union.

**C. CREDIT LIMIT**
My credit limit, as determined by the Credit Union, may be reviewed periodically by the Credit Union, and I may be requested to provide current information. My borrowing limit may be increased or decreased at that time, or it may be terminated as to future advances.

**D. REPAYMENT TERMS**
1. I promise to pay to the Credit Union at its office all sums advanced to me under this agreement at any time plus a finance charge determined by the Credit Union. The finance charge is the amount of money that I pay for the money I borrow. The cost is computed based upon an Annual Percentage Rate.
2. The unpaid principal balance on any day is arrived at by adding any loan advances and subtracting any payments of principal. The finance charge is accrued daily by multiplying the daily interest rate applicable to each loan sub-account, if any, by the adjusted unpaid principal balance of each sub-account. It continues to be charged from the day the funds are loaned to me until they are repaid to you.
3. Payments by me will be first applied to the reduction of any charges, then the finance charge and the remainder, if any will be applied to the reduction of the principal loan balance. Payments, including the applicable portion of the principal, will be apportioned to sub-accounts in conformity with Credit Union policy, the appropriate amortization schedule, and the requirements of the law.
   - Payment checks, not accompanied by loan coupons or other specific designation of payment, will be applied to loan sub-accounts in the Credit Union's discretion.
4. **This is a fixed rate loan. The Annual Percentage Rate for any sub-account, is shown in the "Open-End Loan Rate Sheet". The current rate for my loan advance may be different since interest rates change periodically. The rate applicable to my loan advance will be shown on my loan advance voucher and my statement. It will apply to the sub-account until it is paid off, or until I obtain another loan advance under this open end loan program.**
   - My required payment will increase only when the principal unpaid balance increases due to a further loan advance, or if due to delinquency, the loan payment is insufficient to pay off the loan over any maximum period required by the Credit Union.
   - On certain loan types, my interest rate will be reduced according to the terms shown in the "Open-End Loan Rate Sheet." My reduced rate may be discontinued without advance notice in the month in which I stop making payments by payroll deduction or automatic transfer.
   - If I qualify for and choose to participate in the Credit Union's Summer Skip program, I will not have to make my regular loan payments during the months of August and September. Regular payments will resume in October. Interest will continue to accrue on my outstanding balance during the months in which I skip my payments.
5. The Credit Union will send me periodic statements of my loan account which will advise me of the status of my loan.
6. I will make monthly payments on or before the date specified on the loan advance voucher.
7. Any loan to me, which for any reason is, together with my current unpaid loan balance, in excess of my authorized credit limit, must be reduced by me by a single lump sum payment to the authorized credit limit on written notification by the Credit Union.

**E. OTHER CHARGES**
I may voluntarily elect to purchase Credit Life Insurance or Credit Disability Insurance. My insurance can be cancelled by the Credit Union if I do not make my payments on time. The Credit Union will add the insurance premiums to the principal balance of the loan, increasing the number of loan payments or increasing the payment amount. Estimated Monthly Disability Insurance premium: approximately $1.80 per $1,000 of insurance. Estimated Monthly Life Insurance premium: Single $.45, Joint $.72 per $1,000 of insurance. The premium may vary with number of payments. Estimates are subject to change without notice if the Credit Union obtains a lower rate. Exact unit cost, if different, will be stated in the separate insurance document. Mechanical Breakdown Insurance is also available at an estimated $225 or more depending upon the plan and the vehicle covered.

**F. SECURITY INTERESTS**
1. The Credit Union at its option will take a security interest in personal property purchased by me with the money that I borrow. It may also take a security interest in property I own at the time. The security interest gives the Credit Union the right to take possession of the security and sell it to pay off all or part of the balance of my loan if I default in any of the terms of my loan or the security agreement.
2. The terms of the security interest are spelled out in detail in the security agreement and are made a part of this agreement by reference to them. The specific security for any transaction will be described on the voucher or receipt at the time of the loan advance. My Credit Union accounts are additional security for the repayment of all loan advances to me. A security interest under the lien laws in all of my Credit Union accounts is described in Section J of this agreement and the VISA Disclosure, if applicable.
3. The security interest of the Credit Union will begin immediately upon my acceptance of the loan proceeds.
4. In consideration for and as a condition of the Credit Union making open-end loan advances available to me via ATM card, I consent to the Credit Union's taking funds in any of my Credit Union accounts, including IRA, to pay any delinquency on any of my open-end loan sub-accounts. The lien does not restrict my right to withdraw funds prior to the exercise of the Credit Union's right and is not a pledge by me of the account. Any exercise of the right by the Credit Union is not an election of remedies.

**G. CHANGES IN TERMS**
1. The interest rate applicable to any sub-account will change to the then current interest rate for the sub-account at the time of any new loan advance.
2. The Credit Union has the right to change the terms of the loan on proper written notice to me. I have the option of not borrowing any more money and paying off the loan account under the terms before the change. If I accept an advance after a change in terms it will apply to the entire loan balance of my open end loan account.

**H. HONEST DEALING**
I will promptly notify the Credit Union of any information that affects my creditworthiness or ability to pay off the loan including but not limited to a change in address or employment. I will not apply for any loan advance if I have reason to believe that I will be unable to make the scheduled payments.

**I. ADDITIONAL TERMS APPLICABLE TO CO-SIGNERS**
As a co-signer I understand and agree that I am obligated to repay any amount borrowed under this agreement up to the credit limit established by the Credit Union for the borrower to the same extent as the borrower, whether or not I get any of the money borrowed or even obtain any benefit from the loan. I understand that if I had not agreed to be obligated to repay the amounts borrowed, the Credit Union would not approve the credit. The Credit Union can proceed against me if the payments are delinquent even before it seeks to recover from the borrower. The Credit Union will give me notice of any action it takes that may adversely affect me. Any extension of the loan or partial settlement with the borrower will not waive any of the Credit Union's rights against me. I can stop being obligated for future loan advances only by writing to the Credit Union to that effect. But I will still be jointly and individually liable with the borrower for the repayment of the existing loan according to the terms of this agreement. I acknowledge receipt of the separate co-signer's notice.

**J. DEFAULT-OFFSET-ACCELERATION**
1. If I fail to make the agreed payments, fifteen (15) days after the payment is due, I authorize you to apply any amount in any of my accounts held by the Credit Union at any time to pay off, in full or part, my loan. Unless my loan is specifically secured by my Credit Union accounts the lien does not restrict my right to withdraw funds prior to the exercise of the Credit Union's right and is not a pledge by me of the account. Any exercise of the right by the Credit Union is not an election of remedies.
2. If I am in default in my loan payments, in breach of the terms of this agreement, not a member in good standing, die, file for bankruptcy relief, or the liquidation value of the security for any sub-account is less than the sub-account loan balance, the Credit Union may declare the entire unpaid balance of the loan due and payable immediately without notice.
   - Even if the Credit Union accepts late payment or partial payment, it is not waiving its right to accelerate the payment of the loan and declare this entire unpaid balance due. The regular interest required under the terms of this agreement will continue to accrue even after my default and acceleration of the obligation.

**K. COLLECTION COSTS**
If my payment is 15 or more days late, you will add to my loan balance one late fee per late payment, equal to the greater of $5.00 or 3% of the payment due. A $15 maximum late fee applies to credit cards and unsecured credit lines only. There is no maximum late fee on secured credit. I agree to pay all reasonable collection costs incurred by the Credit Union before suit is filed. If you sue me to collect on this loan, I agree to pay whatever attorney's fees and costs the court finds reasonable.

**L. TERMINATION**
The Credit Union may terminate this agreement at any time as to future loan advances for a sound business reason by sending me a written notice of the termination and the reasons for so doing. I also have the right to terminate this agreement as to future loan advances on written notice to you.

**M. GENERAL TERMS**
The terms of this agreement must be read together with the Security Agreement. When the singular is used the plural is implied if there is more than one signer. If any part of this agreement is found to be invalid the other parts shall remain in effect. It shall not be construed against either party. California law shall be applied to its interpretation.

My signature below acknowledges that I have read and understand this agreement including all terms and conditions on both pages of this disclosure.

_____     03/05/2004     _____     Date
DAVID A ARIAS                        Date

# EXHIBIT C



Send to Printer

advertisement



2010 GMC SIERRA 1500
NO OTHER COMPETITOR OFFERS OVER 300 HP
WITH OVER 20 HIGHWAY MILES PER GALLON.

GMC
SHOP GMC

## 2001 Ford F250 Super Duty Crew Cab Short Bed

### BLUE BOOK® PRIVATE PARTY VALUE



| Condition | Value |
|---|---|
| Excellent | $7,925 |
| ✓ Good (Selected) | $7,225 |
| Fair | $6,325 |

advertisement



GMC SIERRA

2010 GMC SIERRA CREW
1873 LBS. OF PAYLOAD.
OUR MOST POWERFUL
HALF TON V8 EVER.

### Vehicle Highlights

**Mileage:** 135,000
**Engine:** V8 5.4 Liter
**Transmission:** Automatic
**Drivetrain:** 2WD

### Selected Equipment

**Standard**

| | | |
|---|---|---|
| XL | Power Steering | Dual Front Air Bags |
| Air Conditioning | AM/FM Stereo | ABS (4-Wheel) |

### Blue Book Private Party Value

Kelley Blue Book Private Party Value is the amount a buyer can expect to pay when buying a used car from a private party. The Private Party Value assumes the vehicle is sold "As Is" and carries no warranty (other than any remaining factory warranty). The final sale price may vary depending on the vehicle's actual condition and local market conditions. This value may also be used to derive Fair Market Value for insurance and vehicle donation purposes.

### Vehicle Condition Ratings

**Excellent** — $7,925

- Looks new, is in excellent mechanical condition and needs no reconditioning.
- Never had any paint or body work and is free of rust.
- Clean title history and will pass a smog and safety inspection.
- Engine compartment is clean, with no fluid leaks and is free of any wear or visible defects.
- Complete and verifiable service records.

Less than 5% of all used vehicles fall into this category.



**Good** (Selected) — $7,225

- Free of any major defects.


SHOP GMC

"Based on comparable and property equipped models.

Close Window